UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **DUNN CONSTRUCTION, L.L.C.** | * | **CIVIL ACTION NO. 08-1631c/w 1632** |
| **VS.** | * | **MAGISTRATE JUDGE HILL** |
| **GRAY INSURANCE CO.** | * | **BY CONSENT OF THE PARTIES** |

MEMORANDUM RULING

Pending before the Court is the Motion for Summary Judgment filed by defendant, Gray Insurance Co. ("Gray"), on May 8, 2009. [rec. doc. 11]. Plaintiff, Dunn Construction, L.L.C. ("Dunn"), filed opposition. [rec. doc. 14]. Gray filed a reply brief. [rec. doc. 15]. Oral argument was held on January 6, 2010, after which the Court took the motion under advisement. For the reasons set forth below, the motion is **GRANTED**.

Background

Dunn brought this action under the Miller Act, 40 U.S.C. §§ 3131-3134. On September 29, 2005, the United States Contracting Agency, Southern Region, Fort Polk Directorate of Contracting ("the USCA"), entered into a construction contract with Government Technical Services, L.L.C. ("GTS") in the amount of $1,500,00.00. The contract called for the installation of standing seam metal roof systems on buildings 1160, 1270, and 1272 to be used for housing soldiers at the Fort Polk Army Base. On October 17, 2005, Gray, as surety, issued a Miller Act payment bond on behalf of GTS in connection with the installation of the roof systems on the buildings.

On April 4, 2006, GTS subcontracted with Dunn to install the roofing systems on the three buildings for the amount of $434,370.00.  Eight Change Orders were issued during the course of the project.  In a pay application submitted to GTS on February 26, 2007, Dunn certified that it had completed 99.08% of its work. [rec. doc. 11-8, Exhibit 3, Bates stamped nos. 000085-000086].   The Payment History dated September 11, 2007, indicates that the last Change Order to complete the job was dated February 21, 2007.  [rec. doc. 11-8, Exhibit 3, Bates stamped 000001].  This Change Order brought the total contract price to $500,462.00.  The Payment History shows the billing dates and payments made by GTS, and states that, after considering the change orders and payments made to Dunn, the balance of $204,624.38 was then due.

Ricky Carver ("Carver"), a Quality Assurance Specialist for the Mission Installation Contracting Command, Directorate of Contracting ("MICC") at Fort Polk, maintained a Daily Quality Assurance Record of the progress of work completed by Dunn.  On June 28, 2007, Carver delivered by e-mail to GTS and Dunn a "punch list" of deficiencies in the roofing system which required correction.  He kept a Daily Quality Assurance Record of these deficiencies on the three buildings from August 12, 2007 through December 1, 2007. [rec. doc. 11-6, Affidavit of Ricky Carver, Exhibit 1].  These records indicated that during that time, Dunn's employees were correcting "punch list" items.  None of Dunn's employees worked on the project after November 19, 2007.

By letter dated August 28, 2007, Dunn's attorney, Robert M. Davis, III ("Davis"), informed Gray that Dunn intended to assert a claim on the bond. [rec. doc. 11, Affidavit of Ivette Gualdron, Exhibit B-4]. In the letter, Davis stated that "[t]his project is 99 ½ to 100% complete by Dunn, with only punch list type items to complete, if any work is remaining." Further, Davis stated that "DUNN completed the major part of its work in or about April or May, 2007." In a letter dated December 14, 2007 to Gray's counsel, Richard E. Baudouin, Davis reiterated that the work was "99% to 100% complete, with only punch list type items remaining to be completed," and that the balance owed was $204,624.38, which is the same amount included in the September 11, 2007, Payment History. [rec. doc. 11, Affidavit of Richard E. Baudouin, Exhibit G-3].

On October 30, 2008, Dunn filed suit against Gray and GTS under the Miller Act. Gray filed the instant motion for summary judgment on May 8, 2009, on the basis that Dunn's claim had prescribed.

### **Summary Judgment Standard**

Fed.R.Civ.Proc. Rule 56(c)(2) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.Proc. Rule 56(e)(2) provides, in pertinent part, as follows:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own

pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

## Limitations Analysis

The Miller Act sets forth a time period under which a claim must be brought against a payment bond issued by a surety. Pursuant to 40 U.S.C. § 3133(b)(4):

An action brought under this subsection must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action.

The rights created by the Miller Act are federal in nature and scope, and federal law controls the computation of the limitations period. *U. S. For Use and Ben. of Harvey Gulf Intern. Marine, Inc. v. Maryland Cas. Co.*, 573 F.2d 245, 247 (5th Cir. 1978).

Here, Gray asserts that Dunn had completed work prior to October 30, 2007, which would be one year before the date that Dunn filed suit. The record reflects that Dunn had completed the supplying of labor as early as February 26, 2007, and that the remaining work constituted corrections or "punch list" items only.

The last Change Order to complete the job was dated February 21, 2007. In the pay application dated February 26, 2007, Dunn certified that it had completed 99.08% of its work. On June 28, 2007, Carver, the Quality Assurance Specialist, delivered to GTS and Dunn a "punch list"of deficiencies in the roofing system which required correction. The Daily Quality Assurance Records dated August 12, 2007 through November 19, 2007

4

indicated that the project had already been completed, and that Dunn's employees were correcting "punch list" items only.[1]

In the Fifth Circuit, correction of errors has been held insufficient to extend the time for filing suit. *General Ins. Co. of America v. U.S. for Use of Audley Moore and Son*, 406 F.2d 442, 443-444 (5th Cir. 1969) (*citing United States ex rel. Austin v. Western Electric Co.*,337 F.2d 568 (9th Cir. 1964); *United States ex rel. Circle-L-Electric Co. v. Hyde Construction Co.*, 255 F.Supp. 335 (N.D.Okla.1966); *United States ex rel. McGregor Architectural Iron Co. v. Merritt-Chapman & Scott Corp*., 185 F.Supp. 381 (M.D. Pa.1960)). On rehearing, the Fifth Circuit clarified its ruling in *Audley Moore*, stating that "[l]abor furnished in the prosecution of the work is not co-terminous with the outer limits of all duties provided by the contract." *General Ins. Co. Of America v. U.S. for Use of Audley Moore*, 409 F.2d 1326, 1327 (5th Cir.), *cert. denied*, 396 U.S. 902, 90 S.Ct. 214, 24 L.Ed.2d 178 (1969). The court considered the situation in *Trinity Universal Ins. Co. v. Girdner*, 379 F.2d 317 (5th Cir. 1967), in which the period of limitations was tolled where the inspector refused to approve the original work unless defective parts were replaced. However, the court stated that the situation in *Trinity* was "to be distinguished from the situation in which labor is supplied or material furnish to correct defects after the work has been completed." *Id*.

---

[1]At oral argument, counsel for Dunn confirmed what the court already knew, that is, that "punch list" items were those items left unfinished, or which needed repair, after the completion of the contract.

Here, Dunn's own documents show that Dunn had completed its work prior to October 30, 2007. In the pay application dated February 26, 2007, Dunn certified that it had completed 99.08% of its work. Dunn's attorney indicated that as of April or May, 2007, the project was "99 ½ to 100% complete by Dunn, with only punch list type items to complete, if any work is remaining." Additionally, the Quality Assurance Records confirm that only punch list items remained to be completed after August 12, 2007.

Further, the Payment History dated September 11, 2007, indicates that the last Change Order to complete the job was dated February 21, 2007. The Payment History shows the billing dates and payments made by GTS, and states that, after considering the change orders and payments made to Dunn, the balance of $204,624.38 was then due. In a letter dated December 14, 2007, Gray's attorney reiterated that the work was "99% to 100% complete, with only punch list type items remaining to be completed," and that the balance owed was $204,624.38 – the same amount included in the September 11, 2007, Payment History. This indicates that, at least as of September 11, 2007, no additional work had occurred.

Based on the statements from Dunn's own attorney, Dunn completed the work as early as April or May, 2007. At the latest, according to the Payment History, the work had stopped as of September 11, 2007. Under either analysis, Dunn's time for filing a Miller Act claim had expired when this Complaint was filed. Accordingly, the

claim is prescribed.

## Conclusion

Based on the foregoing reasons, the Motion for Summary Judgment is hereby **GRANTED,** and all claims asserted against defendants are **DISMISSED WITH PREJUDICE.**

January 13, 2010, Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE